# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JUDICIAL WATCH, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE** *et al.*, <br><br> Defendants. | Case No. 1:17-cv-00508 (TNM) |

## MEMORANDUM OPINION

This matter is one of approximately 13 lawsuits filed by Judicial Watch, Inc. ("Judicial Watch") regarding Hillary Clinton's use of a private email server during her tenure as Secretary of State and her mishandling of classified information. Compl. ¶¶ 18-19, 22, 32, ECF No. 1. Judicial Watch seeks, through this Administrative Procedure Act ("APA") action, a declaratory judgment and order that the Office of the Director of National Intelligence, among others (collectively, the "Government") should have and now must conduct a damage assessment of former Secretary Clinton's email practices as allegedly required by Intelligence Community Directive ("ICD") 732. *Id*. at 11. The Government's motion to dismiss argues that Judicial Watch lacks standing—the constitutionally required predicate that provides a plaintiff entrée into federal court, and which requires a showing that the plaintiff was actually injured by the wrong ascribed to the defendant. *See* Defs.' Mot. to Dismiss 1, ECF No. 8. The Government further argues that the Complaint fails to state a claim upon which relief can be granted. *Id.* Having confirmed that jurisdiction and venue is proper in this Court,[1] and upon consideration of the

---

[1] 28 U.S.C. §§ 1331, 1391.

pleadings, relevant law, and related legal memoranda in opposition and in support, I find that Judicial Watch's interest in filing a Freedom of Information Act ("FOIA") suit for disclosure of the requisite damage assessment does not create standing to enforce ICD 732. Accordingly, the Government's motion will be granted and the Complaint will be dismissed without prejudice.

**I.     Background**

Judicial Watch, a not-for-profit organization, seeks a declaratory judgment and order against the Office of the Director of National Intelligence, the U.S. Department of State, and the Acting Director of National Intelligence, National Counterintelligence Executive, and U.S. Secretary of State in their official capacities. Compl. ¶¶ 4-8; *id.* at 11. Judicial Watch alleges that the Government was required, under ICD 732, to conduct a "damage assessment" regarding Hillary Clinton's use of a private email server while serving as Secretary of State and that its failure to do so prevented it from submitting a FOIA request for the report and records of the assessment. *Id.* ¶¶ 13, 38. In particular, Judicial Watch alleges that because the FBI found Secretary Clinton and her colleagues to be "extremely careless in their handling of very sensitive, highly classified information," resulting in the "possib[ility] that hostile actors gained access to Secretary Clinton's personal e-mail account," this triggered ICD 732's requirement to conduct a damage assessment as a result of "an actual or suspected unauthorized disclosure or compromise of classified national intelligence that may cause damage to U.S. national security." *Id.* ¶¶ 22, 35; ICD 732 § D.2 (June 27, 2014), ECF No. 8-2. Judicial Watch asks the Government's inaction be declared "agency action unlawfully withheld or unreasonably delayed" and as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Compl. 11; *see also* 5 U.S.C. §§ 706(1), 2(A). The Government contests that Judicial Watch's alleged injury—its inability to submit a FOIA request—constitutes an "injury-in-fact"

to confer standing, and that Judicial Watch is in the "zone of interests" protected by the ICD. Defs.' Mot. to Dismiss. 1-2.

## II.     Legal Standard

The "core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To meet this constitutional requirement, a plaintiff must suffer an "injury in fact," an "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id*. (citations omitted) (internal quotation marks omitted). There must also exist a "causal connection between the injury and the conduct complained of"; and the injury must be of a type "likely" to be "redressed by a favorable decision." *Id.* 560-61 (internal quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements" with the same "manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.

One type of concrete and particularized injury in fact that may confer standing is informational injury, in which a party shows that "it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and [that] it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (citing *FEC v. Akins*, 524 U.S. 11, 21-22 (1998)).

In addition to the "minimum requirements of Article III standing," to obtain judicial review under the APA, a party must show that the injury asserted falls within the "zone of interests" of the statute. *Animal Legal Def. Fund, Inc. v. Espy*, 23 F.3d 496, 499, 501 (D.C. Cir. 1994); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388

3

(2014) (the "zone of interests" limitation applies to all statutorily created causes of action, including those for judicial review under the APA). Whether a plaintiff falls within the zone of interests "requires [courts] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 1387. In other words, to be within the zone of interests, a plaintiff "must show either a congressional intent to protect or regulate the interest asserted, or some other indication that the litigant is a suitable party to pursue that interest in court." *Animal Legal Def. Fund*, 23 F.3d at 502. Informational injuries "can surmount the zone of interests threshold only in very special statutory contexts." *Id.*

### III. Analysis

Intelligence Community Directive 732, issued by then-Director of National Intelligence James Clapper in June 2014, establishes the "policy for the conduct of damage assessments in response to the unauthorized disclosure or compromise of classified national intelligence." ICD 732 § B.1. The policy specifies the parameters by which damage assessments are mandatory, *see id.* § D.2, and when they are permissive, *see id.* § D.3. When conducted, the policy also specifies what damage assessments shall include; for instance, a "description of the circumstances under which the unauthorized disclosure or compromise transpired" and a "summary of findings for use in understanding and mitigating damage that could result from future unauthorized disclosures and compromises." *Id.* § D.7. Judicial Watch contends that the FBI's investigation into Hillary Clinton's email practices while Secretary of State unearthed findings that constitute precisely the scenario that requires a damage assessment under ICD 732 Section D.2, and that the Government's failure to conduct one harms Judicial Watch's mission of public education. *See* Mem. of P. & A. in Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp.") 7, ECF No. 10. As ICD

4

732 provides no private right of action for enforcement, Judicial Watch has sued under the APA. *See generally* ICD 732; Compl. 11. Because Judicial Watch fails to establish that it has suffered an informational injury and that it is within ICD 732's "zone of interests," it lacks standing to bring this challenge.[2]

### A. Informational Injury

Judicial Watch fails to establish that it has a concrete and particularized injury since the provision[3] under which it seeks information—ICD 732—does not require disclosure. It creatively argues that since ICD 732 requires a damage assessment, and FOIA requires disclosure, it meets the standard for informational injury. Pl.'s Opp. 9. Putting aside the Government's arguments that the circumstances alleged by Judicial Watch do not trigger the mandatory assessment provision of ICD 732 and further, that classified and law enforcement information may properly be withheld from disclosure under FOIA, bootstrapping ICD 732 to FOIA does not establish the deprivation of a statutorily-required disclosure. *See* Defs.' Mot. to Dismiss 3, 11 n.7; *Friends of Animals*, 828 F.3d at 992.

---

[2] Each of these failures provides an independent reason to dismiss this action. *See Animal Legal Def. Fund*, 496 F. 3d at 498-99 (explaining the standards for constitutional standing and judicial review under the APA). Because I hold that Judicial Watch neither has Article III standing nor is in the zone of interests such that this action is judicially reviewable, I do not need to address the reminder of the Government's arguments that Judicial Watch has failed to state a claim, nor need I decide whether to defer to the Government's view that then-Secretary Clinton's actions fall under ICD 732 Section D.3 (discretionary damage assessments) rather than Section D.2 (mandatory damage assessments). *See* Defs.' Mot. to Dismiss at 17-19 (citing *Auer v. Robbins*, 519 U.S. 452 (1997)).

[3] The cases relied upon by the parties involve federal statutes while ICD 732 is an administrative directive. The Plaintiff has not addressed, and the Government has not challenged, whether an informational injury could be established by an alleged failure to comply with a directive as opposed to a statute. For the purposes of this opinion, I assume without deciding that it can.

Judicial Watch relies on two cases to support its theory. One, *Murray Energy Corporation v. McCarthy*, is a non-controlling case from the Northern District of West Virginia that was vacated in part by the Fourth Circuit on other grounds. No. 5:14-cv-39, 2016 WL 6083946 (N.D. W. Va. Oct. 17, 2016), *vacated in part*, *Murray Energy Corp. v. Admin. of EPA*, 861 F.3d 529, 537 (4th Cir. 2017) (declining to address the EPA's challenges to the district court's standing rulings). In its brief discussion of informational injury, the district court found that it was sufficient for the plaintiffs to potentially "be entitled to the information which has not been collected or analyzed" and that the plaintiffs potentially could receive the information through a FOIA request. 2016 WL 6083946 at *16. Whether the statute, in conjunction with FOIA, afforded informational injury was not a direct issue at question, and the court's comparatively brief treatment of informational injury in relation to its consideration of other bases for standing counsels that I not rely on it in my analysis.

Judicial Watch's primary case law, *Waterkeeper Alliance v. EPA*, concerns the interrelation between two statutes, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") and the Emergency Planning and Community Right-to-Know Act of 1986 ("EPCRA"). 853 F.3d 527, 530, 533 (D.C. Cir. 2017). As it pertains to the release of hazardous materials into the environment, CERCLA and its implementing regulations requires farms over a particular size to report certain information to federal authorities while EPCRA requires all farms, regardless of size, to report the same information to relevant state and local agencies. *Id.* at 531-32. The EPA argued that the plaintiffs did not have standing to sue under CERCLA because it does not have a provision requiring public disclosure of the information reported, as EPCRA does. *Id.* at 533. The U.S. Court of Appeals for the District of Columbia Circuit disagreed, finding that there is a "complex interplay between CERCLA and

6

EPCRA" such that exempting certain information from CERCLA reporting reduced the information required to be publicly disclosed under EPCRA. *Id.* Furthermore, EPCRA's reporting requirements are expressly tied to CERCLA's, making "all of EPCRA's reporting mandates [] piggybacked on the CERCLA mandates in one form or another." *Id*.

None of these circumstances are present in the current case. The directive and FOIA are entirely different regimes, govern different conduct, and there is no express or implied interrelation between the two. Whether information is required to be disclosed under ICD 732 has no effect on FOIA, for FOIA does not require the government to create documents but merely to produce documents that it already maintains. *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) ("The Act does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained."). The provisions of CERCLA and EPCRA analyzed in *Waterkeeper* have a much closer, direct connection that is utterly lacking between ICD 732 and FOIA.

*Friends of Animals v. Jewell*, cited by the Government, is far more analogous to the present case. There, the same court that decided *Waterkeeper* held that the provision under which the plaintiff sued "does not itself mandate the disclosure of any information" and that the plaintiff did not suffer an informational injury. 828 F.3d at 990. In *Friends of Animals*, the plaintiff sued under a provision of the Endangered Species Act that required the Secretary of the Interior to *first*, upon petition from any "interested person" to add or remove a species from the endangered or threatened species lists, to determine whether the requested action should proceed for consideration; and if so, *second*, to determine whether the requested action is warranted, not warranted, or temporarily precluded by other pending proposals. *Id*. The plaintiff's proposal made it past the first step of this process, but the Secretary of the Interior failed to make a

7

determination as to the second step within the statutorily-required timeframe. *Id*. at 991. The plaintiff sought—similar to Judicial Watch in this case—a declaratory judgment that the Secretary of the Interior violated the statute and an order directing her to issue the determination. *See id*. The court held that the plaintiff failed to show "the *sine qua non* of informational injury" by "seeking to enforce a statutory deadline provision that by its terms does not require the public disclosure of information." *Id.* at 992. Though the Secretary of the Interior was required to publicly publish the result of the second step of the process, the court identified that the redress that the plaintiffs sought—the making of an overdue decision on the proposal—as pertaining to the act's "deadline requirement" as opposed to the act's distinct disclosure requirement. *Id.* at 993. In its analysis, the court specifically considered and rejected the plaintiff's argument that "[t]ogether . . . those two requirements confer on it 'the right to timely information.'" *Id.*

Similar to Friends of Animals seeking to "enforce [the statute's] deadline requirement, not its disclosure requirement," Judicial Watch seeks to require the Government to perform an action, and is not suing under a disclosure requirement. *See id.* at 994. This deficiency is compounded in Judicial Watch's case as the information it seeks is not required to be disclosed by the terms of the directive itself. Even more significant, however, is the fact that ICD 732 and FOIA govern entirely distinct subject matter and have polar opposite purposes (national security versus public access to information). The facts of this case are far afield from *Friends of Animals*, where the plaintiff attempted to allege information injury by conjoining two sections of the same statute—and even in that case, the D.C. Circuit held that there was no informational injury since relief was plainly sought under the statute's deadline requirement. Following the logic of *Friends of Animals*, Judicial Watch may not join together what others have put asunder in an effort to sufficiently allege informational injury.

8

**B. Zone of Interests**

In addition to lacking constitutional standing, Judicial Watch fails to show that it is within the "zone of interests" of ICD 732. The directive's purposes are clearly stated: to "[e]stablish [a] policy for the conduct of damage assessments in response to the unauthorized disclosure or compromise of classified national intelligence; [p]rovide a process for coordination and cooperation within the Intelligence Community (IC) [to produce damage assessments] in an efficient, timely, consistent and collaborative manner; and [p]rovide a process for the IC to use the findings and recommendations from damage assessments to strengthen the protection of classified national intelligence". ICD 732 § B. The common thread among these stated intentions is the analysis and advancement of the Intelligence Community's protection of classified national intelligence. Plus, all of ICD 732's provisions indicate processes internal to the Intelligence Community. Conspicuously absent from ICD 732's purposes and provisions is any intention to make damage assessments or the other processes established available for general public consumption. Indeed, an intent to publicly disclose the Intelligence Community's analysis and recommendations would seem to be incongruous with the directive's national security-focused outcomes, such as strengthening the country's protection of classified national intelligence. And, of course, our country's Intelligence Community is fiercely protective of intelligence analyses, and is not known for willingly publicly disseminating them.

The Plaintiff argues that ICD 732 "cannot be analyzed in a vacuum" and that the statute and Executive Orders under which ICD 732 was created also address the dissemination of information, which Judicial Watch has an interest in given their mission statement and "extensive use of FOIA." Pl.'s Opp. 13-14. But Judicial Watch has not sued under the National Security Act or the Executive Orders, nor has it alleged that ICD 732 interrelates or is subject to

any provisions of the National Security Act or Executive Orders that require disclosure. This scenario is not one of the "special statutory contexts" where the alleged informational injury is a kind that Congress meant to protect. *See Animal Legal Def. Fund*, 23 F.3d at 502.

## IV. Conclusion

For the foregoing reasons, the Government's Motion to Dismiss will be granted and the Complaint will be dismissed without prejudice. A separate order will issue.

Dated: March 22, 2018

TREVOR N. MCFADDEN
United States District Judge